100 So.2d 807 (1958)
WEST COAST HOSPITAL ASSOCIATION, a Florida non-profit corporation, Appellant,
v.
The FLORIDA NATIONAL BANK OF JACKSONVILLE, a national banking corporation, and Paul F. Randolph, as surviving Trustees of Trust under Will of Mary S. Morrow, Deceased, and Chester B. McMullen, Jr., as Executor of the Estate of M.A. McMullen, Deceased, Trustee, Appellees.
Supreme Court of Florida.
February 28, 1958.
*808 Marshall & Rives, Clearwater, and Fowler, White, Gillen, Yancey & Humkey, Miami, for appellant.
Mann, Harrison, Roney, Mann & Masterson, St. Petersburg, for appellees.
DREW, Justice.
Mary S. Morrow died January 9, 1950, leaving a last will and testament in which The Florida National Bank of Jacksonville, Paul F. Randolph and M.A. McMullen were named as executors and trustees. At the conclusion of the administration of the estate, on or about April 1, 1952, the executors distributed to themselves as trustees of a trust created by said will government bonds of the approximate value of $800,000. The will directed Mrs. Morrow's estate to be liquidated and directed her executors to purchase "United States of America Government Bonds, the kind and issue of said United States of America Government Bonds which shall be purchased I leave to the discretion of my executors provided, however, all the property referred to in this item of my Will must be sold and the proceeds used for the purchase of said Bonds." It is then directed in the will:
"After my executors have purchased said bonds, I direct them to assign, transfer and set over unto my trustees *809 hereinafter named said bonds, in trust nevertheless, for the following uses and purposes:
"(a) The corpus of said trust to be held intact except as and when said bonds are called by the government of the United States of America, or when it is necessary to exchange said bonds for other United States government bonds by reason of any regulation of the United States Government. Then and in that event I direct my trustees, from the proceeds of any sale, to re-purchase bonds issued by the United States Government, or exchange for bonds issued by the United States Government, and to continue to hold the same in accordance with the provisions herein contained.
"(b) All of the net income derived from the corpus of the trust hereby created I direct my trustees to pay in semi-annual instalments to the West Coast Hospital Association, (a nonprofit charitable corporation) of Clearwater, Florida, which Association operates the Morton F. Plant Hospital in Clearwater, Florida, and I direct that the said West Coast Hospital Association shall use the net income from my trust estate so created for such uses and purposes as Dr. M.E. Black, of Clearwater, Florida, in his sole judgment and discretion shall direct and the direction for the use and application of said net income shall in nowise be questioned nor shall he be interfered with by the then constituted and acting Board of Directors of said Association. Upon the death or inability of the said Dr. M.E. Black to act, then and in that event only I direct the West Coast Hospital Association to use the income from my trust estate for such uses and purposes as my trustees or the survivors of my trustees, in their judgment and discretion, shall direct. This bequest is made in memory of my deceased husband, George K. Morrow."
Between April 10, 1952 and January 10, 1955, the trustees collected a total of $54,951.15 as income from the various government securities which they held as trustees. During the same period of time the trustees paid themselves $19,993.78 in fees and claimed $3,506.60 in addition for such period of time, making an aggregate of $23,500.38 claimed as reasonable compensation for their services as trustees under the trust created by Mrs. Morrow's will. During such period the trustees distributed to the Hospital Association net income of $45,344.83. A portion of the fees claimed by and paid to the trustees was allocated to and charged against the corpus of the trust rather than the income.
The Hospital Association objected to the amount of fees which the trustees had paid themselves as well as the allocation of a portion thereof to corpus, but they were unable to reach any agreement with reference to the dispute, whereupon the Hospital Association notified the trustees that unless a proposal with reference to reduced fees, which had been previously submitted, was accepted by them within twenty days, they would institute suit for the purpose of securing a determination of the matter. Before the expiration of the twenty day ultimatum by the Hospital Association, the trustees brought this action for declaratory judgment, and secured a decree in the lower court favorable to their contention. Under these circumstances the rules allowing a trustee to recover his attorneys' fees in defending a suit brought against him are applicable because the litigation was precipitated by the beneficiary. See Powell v. Cocowitch, infra. Moreover, the Hospital Association asserts in its brief "The trustees only applied to the Court when suit by the beneficiary against them was imminent."
In this appeal from the decree, three principal points are urged for reversal. First, the Hospital Association contends that the lower court erred as to the amount of fees awarded and in authorizing the *810 trustees to charge a portion of said fees to the corpus of the trust. Second, it argues that it was error to fix annual fees on an arbitrary percentage of the corpus and income instead of a reasonable compensation for the services performed to the trust and to approve said formulae for future years; and, third, it says that the court erred in awarding attorneys' fees payable out of the corpus of the trust for the services of the trustees' attorneys in said cause. No error is assigned to the award of fees to the attorneys for the Hospital Association.
In the construction of testamentary trusts, it is the duty of the courts to ascertain and give effect to the intention of the testator. This is an elementary proposition. Cartinhour v. Houser, Fla. 1953, 66 So.2d 686; Morgenthaler v. First Atlantic National Bank, Fla. 1955, 80 So.2d 446. That it was the intention of the testator to hold the corpus intact is quite obvious. The word has a well defined meaning, is one easily understood and commonly used in instruments of this kind. The significance of the word, however, must be considered in the light of well settled principles of law regulating the administration of trust estates, one of the most firmly established being the rule that the cost and expenses of administering a trust are, in the absence of a statute or instructions in the trust instrument or other writing to the contrary, in proper cases allocable between principal (corpus) and income on some rational basis. Many services of the trustees relate to preservation and protection and enhancement of principal and others to collecting, disbursing and protection and enhancement of income. Courts having jurisdiction of the trust have, necessarily, and by virtue of the very nature of the thing, some latitude in determining whether such compensation shall be paid in whole or in part from the corpus of the estate. Dunscombe v. Smith, 1937, 127 Fla. 797, 174 So. 38; Campbell v. Vining, 1931, 101 Fla. 939, 133 So. 555; Vol. 4 Bogert on Trusts & Trustees, Sec. 802, pages 112, 116. There is no statute in this State regulating the subject. Chapter 737, Florida Statutes 1955, F.S.A. is inapplicable because the will and codicils of Mrs. Morrow were dated prior to the effective date of such Chapter. Such awards are controlled by the decisions of this Court and applicable general law.
The record shows the income from the trust to be ample to provide for the effective administration of the trust and the payment of all expenses in connection therewith. This fact, coupled with the manifest intent of the creator that the corpus should be kept intact  and our duty to give effect to this purpose if it may reasonably be done  leads us to the conclusion that all of the fees and expenses involved in these proceedings should have been paid out of income. The discretion of the chancellor, therefore, was improperly exercised and in this respect the decree is reversed with instructions that all of the charges involved in these proceedings and ultimately awarded shall be charged against income.
The decree of the lower court approved an annual fee to the Florida National Bank of Jacksonville as corporate trustee which was equivalent to and based upon 1/4th of 1% of the principal (paid from income) and 1/4 of 1% of the principal (paid from corpus), said payments from principal not to exceed 6% of said principal. Thus the court approved an arrangement whereby the Florida National Bank of Jacksonville, as corporate trustee, was to receive in each year for a period of twenty-four years 1/4th of 1% of principal to be paid out of the principal or corpus and a like amount paid from income during the entire period of this perpetual trust. The lower court approved fees based upon the above formula, one fee payable to the corporate trustee and an amount equal to the corporate trustee's fee payable to the individual trustees in equal shares.
A trustee carries on a fiduciary service requiring faithful and efficient administration *811 of the trust and a conservation of its assets. For such services a trustee is entitled to be paid reasonable compensation. When not agreed upon or fixed in the trust indenture or other instrument, the amount of said award is a matter resting largely in the sound discretion of the chancellor under whose jurisdiction the trust falls. Kay v. Bostwick, 1922, 83 Fla. 308, 91 So. 112.
Where no express contract exists in the indenture or by separate instrument and where no statute exists fixing the amount of compensation, the amount of the award should be such that, under all the circumstances, would be a reasonable remuneration for the service performed. We approve as a standard in determining reasonable compensation the following observation from Bogert, Trusts and Trustees, § 976, viz.:
"If the compensation of the trustee has not been fixed by statute or direction of the settlor, the amount of the award rests in the discretion of the court having jurisdiction, which is ordinarily the court receiving the account of the trustee.
"The following factors may be influential in enabling the court to reach a conclusion as to the appropriate amount of pay which should be granted the trustee in a given case: The amount of capital and income received and disbursed by the trustee; the wages or salary customarily granted to agents or servants for performing like work in the community; the success or failure of the administration of the trustee; any unusual skill or experience which the trustee in question may have brought to his work; the fidelity or disloyalty displayed by the trustee; the amount of risk and responsibility assumed; the time consumed in carrying out the trust; the custom in the community as to allowances to trustees by settlors or courts and as to charges exacted by trust companies and banks; the character of the work done in the course of administration, whether routine or involving skill and judgment; any estimate which the trustee has given of the value of his own services; payments made by the cestuis to the trustee and intended to be applied toward his compensation."
While the evidence is conflicting as to the reasonableness of the total compensation awarded the corporate trustee, the amount fixed by the learned chancellor below is within the figures testified to by the various witnesses who testified as experts. This testimony is not conclusive of the matter, however, and may, under proper circumstances, be disregarded by the lower court or this Court. Powell v. Cocowitch, infra. Subject to the qualifications hereafter imposed by us on the award we conclude that while the evidence shows it to be larger than that which would have been charged by institutions of a like quality, it should be affirmed as to the amount awarded to the corporate trustee as reasonable compensation for its service for the period of the accounting.
While we agree that the total amount of fees awarded by the chancellor to the corporate trustee finds support in the record, the total amount awarded to both the corporate trustee and the individual trustees cannot be sustained. There is no evidence that the total awards are reasonable, and, even if there was evidence tending to establish such to be true, the total amount of compensation goes far beyond what this court considers to be reasonable in the light of the income received, the simple nature of the trust corpus and the minimum management and supervisory duties involved. The trust instrument defines and limits the authority of the trustee with reference to investments to bonds of the United States government. True, there are various classes of bonds issued by the United States government but it is crystal clear that so long as the trustee invests in the described obligations, it has performed its duty and discharged its responsibility *812 concerning the nature of the investment. The remaining duties of the trustees are primarily ones of accounting and bookkeeping. It would be difficult to conceive of a trust less involved than the one here under consideration.
It is well settled that where there are two or more co-trustees the total amount of compensation is ordinarily the same as if there were a single trustee unless it is otherwise provided by the terms of the trust or by statute, or because of particular or specialized services required by the nature of assets of the trust itself. This trust is not of the latter category. A trust is created for the beneficiaries named and not for the purpose of paying fees to the trustees. The trust should pay reasonable compensation for its efficient administration but is required to pay no more than that. The allocation of such compensation between those who participate in the management of the trust is a matter to be decided by them on the basis of services rendered by each. Where such agreement cannot be reached, it may be determined by the court in proper proceedings. A.L.I. Restatement of the Law of Trusts, Sec. 242, page 749; 54 Am.Jur., Trusts, Sec. 533, page 421. Section 734.01(d), F.S.A., provides for the payment of reasonable compensation and a division among multiple representatives or estates according to services rendered by each. The same rule should apply to trustees of a testamentary trust.
That portion of the questioned decree awarding compensation to the individual trustees is hereby reversed, with directions to the lower court upon seasonable application to consider the matter of an equitable division of the fees allowed the corporate trustee and hereby approved between the corporate and individual trustees in proportion to the services and responsibilities of each for the accounting period.
We now direct our attention to the question of attorneys' fees awarded the attorneys representing the various parties in this litigation. The decree awarded $2,500 to the attorneys for the corporate trustee, $1,250 to the attorney for the surviving individual trustee, $625 to the attorney for the executor of a deceased individual trustee and $2,500 to the attorneys for the West Coast Hospital Association, the principal beneficiary of the trust, and directed that all of the costs and expenses, including attorneys' fees, be paid out of the corpus.
Costs and counsel fees may be allowed a faithful trustee in litigation relating to the trust. Such fees should be allowed in those cases where a trustee, in good faith, institutes or defends an action or incurs legal expense in connection with his duties and responsibilities as trustee. The amount of such fees and whether they should be allowed are matters within the sound discretion of the trial court. See Powell v. Cocowitch, Fla. 1957, 94 So.2d 589. While not pertinent to our conclusion here, it is worthy to note  in this connection  that the new trust accounting law (Ch. 737, F.S.A.) provides for attorneys' fees for a trustee for services "incurred by him in the management of the trust estate". "Good faith" is the basic consideration in reaching a conclusion as to whether fees should be awarded. In determining whether liability for fees were incurred in good faith the court could consider, among other things, whether the issue giving rise to the liability was genuine and whether a reasonable, prudent man would have incurred such expense had he been dealing with his personal business affairs. Am.Jur., Trusts, paragraphs 513, 523, 636. No charge of bad faith is made here nor does the record establish a lack of good faith. Under the circumstances disclosed by the record, viz. the absence of any contract on the subject, any statute fixing such fees or any indication of a basis for fixing the amount in the trust indenture and a dispute as to what would constitute reasonable compensation for the trustees, we think the trust is properly chargeable for reasonable fees and *813 costs incurred in this litigation and that it was not an abuse of discretion to order them paid out of the trust estate. For the reason, however, that we have directed that the fees of the trustees be paid out of income, we hereby direct that the attorneys' fees be likewise so paid.
The reasonableness of the fees, however, are another matter. Long ago the Supreme Court of the United States held, in a case arising in this State, that large and extravagant fees should not be allowed and ordered paid out of trust funds under the control of the courts. Trustees of the Internal Improvement Fund v. Greenough, 105 U.S. 527, 26 L.Ed. 1157. See also Am. Jur., Trusts, paragraph 523, supra. The principal of this trust is large and impressive but the questions tried in the lower court are neither novel nor complicated. The record does not convince us that fees totalling $6,875 are justified. No error is assigned to the allowance of fees to the Hospital Association and we, therefore, cannot, at this stage of the proceedings, pass upon it but, as to the remaining fees allowed, those allowed the individual trustees are set aside and the lower court is authorized and empowered on a reconsideration of this cause to allocate the fee of $2,500 allowed the attorneys for the corporate trustee in an equitable manner between its attorneys and the attorneys for the individual trustees. The trial court is also authorized to reconsider the amount of the award to the attorneys for the Hospital Association upon the principles hereby pronounced when this case goes back to him on this opinion and the mandate of this Court.
Insofar as trustees' fees are concerned, this opinion is not to be construed as approving the formulae followed by the trustee in arriving at its fee for a period of 24 years or for any other period of time. We determine only the question that the trustees' fees hereby approved are reasonable under the evidence for the services from April 10, 1952 to January 10, 1955. The reasonableness of fees for future years will be decided in such years and for such services as may be required in such period.
Affirmed in part and reversed in part and remanded for further consideration.
ROBERTS, THORNAL and O'CONNELL, JJ., concur.
THOMAS, Acting Chief Justice, dissents.